Jeff EARL, Appellant–Plaintiff,

v.

AMERICAN STATES PREFERRED INSURANCE CO., Appellee– Garnishee Defendant.

No. 84A01–0007–CV–235.

Court of Appeals of Indiana.

March 20, 2001.

Rehearing Denied April 30, 2001.

Keith L. Johnson, Johnson Law Office, Terre Haute, Indiana, Attorney for Appellant.

John C. Trimble, Anthony M. Eleftheri, Lewis & Wagner, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BARNES, Judge

### Case Summary

Jeff Earl appeals the trial court's grant of summary judgment in favor of American States Preferred Insurance Company (American States) in Earl's garnishment action seeking to collect liability insurance proceeds for an automobile accident allegedly caused by the negligence of American States' insured, Jeanne Conley. We affirm.

### Issue

We restate the general issue before us as whether an exclusionary clause in the policy issued to Jeanne and her husband, Brian, by American States properly precludes Earl's recovery.

### Facts

The undisputed facts of this case, as revealed by the designated summary judgment materials,[1] are that on September 15, 1996, Earl and Jeanne were involved in a motor vehicle collision. Jeanne was driving a Pontiac Bonneville provided by Brian's employer for his regular personal and business use. The vehicle was not routinely available for Jeanne's use, though Brian, with whom she resided, had granted her permission to drive it on the date of the accident. Alleging that Jeanne had been negligent, Earl sued her. The insurer of the Bonneville, who eventually agreed to settle, defended her. An agreed judgment of $1,860,000 was entered against Jeanne; the insurer of the Bonneville paid $1,360,000 of that amount. Earl agreed not to attempt to recover the remaining $500,000 of the judgment from Jeanne personally.

Earl then instituted garnishment proceedings against American States in an attempt to recover that $500,000, the limit of its bodily injury liability coverage of Jeanne. American States moved for summary judgment, arguing that two exclusionary clauses prevented recovery by Earl. The trial court agreed that Exclusion B(2) of the liability section of the policy applied and granted the motion. Earl then initiated this appeal.

### Analysis

Earl claims the trial court erred in granting summary judgment because the exclusionary clause it relied upon was am-

---

1. American States' materials consisted of the insurance policy, Earl's "Affidavit in Garnishment," a "Covenant not to Execute," and a list of facts to which both parties stipulated. Earl presented no additional designated materials, except for American States' answer to the garnishment affidavit.

biguous and, thus, it should have been construed in such a way as to allow for coverage in this situation. A grant of summary judgment requires that no genuine issue of material fact exist and that the movant be entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Lake County Equal Opportunities Council v. Greer*, 735 N.E.2d 206, 208 (Ind.2000). On appeal from summary judgment, the reviewing court analyzes the issues in the same fashion as the trial court, de novo. *Greer*, 735 N.E.2d at 208. The court must also view the pleadings and designated materials in the light most favorable to the non-movant. *Id.*

■ Insurance contracts are governed by the same rules of construction as other contracts. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). Accordingly, the proper interpretation of an insurance policy generally presents a question of law that is appropriate for summary judgment. *Id.* Although ambiguities are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning. *Id.* However, when a case involves a dispute between a third party and an insurer, as is the case here, we determine the general intent of the contract from a neutral stance. *See, e.g., Burkett v. American Family Ins. Group*, 737 N.E.2d 447, 452 (Ind.Ct.App.2000). Additionally, the power to interpret contracts does not extend to changing their terms, and insurance policies in this state will not be given an unreasonable construction to provide added coverage. *Colonial Penn*, 690 N.E.2d at 669.

American States' policy lists the "named insureds" as "Brian Conley … Jeanne Conley." Record p. 150. Also, the policy indicates that:

> Throughout this policy, "you" and "your" refer to:
> 1. The "named insured" shown in the declarations; and
> 2. The spouse if a resident of the same household.

Record p. 153. Exclusion B(2) of the liability section of the policy applies to the use of:

> Any vehicle, other than "your covered auto," which is:
> 1. owned by you; or
> 2. furnished or available for your regular use.

Record p. 155. "Your covered auto" included any vehicles listed in the declarations, newly acquired autos, trailers, and any auto used as a "temporary substitute" for any other covered auto that is temporarily out of service. Record pp. 153–54. The only vehicle listed in the declarations portion of the policy was a Pontiac Transport.

■ Initially, Earl claims that as the summary judgment movant, American States did not meet its burden of establishing that Exclusion B(2) applied because it did not present sufficient evidence that the Bonneville was not a "covered auto" according to the policy. Specifically, he claims American States did not prove that the Bonneville was not a "temporary substitute," to which the exclusion would not have applied. However, American States was not required to prove the Bonneville was not a "temporary substitute."

■ Relying on specifically designated evidence, a summary judgment movant bears the burden of showing *prima facie* that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind.Ct. App.1999). If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id.* Additionally, "[p]rima facie means such evidence as is sufficient to

establish a given fact and which will remain sufficient if uncontradicted." *Mullins v. State,* 646 N.E.2d 40, 50 (Ind.1995) (quoting *Johnson v. State,* 258 Ind. 648, 651, 283 N.E.2d 532, 534 (1972)). "Prima facie does not mean conclusive. Definitions of the term imply that such evidence may be contradicted." *Floyd v. Jay County Rural Elec. Membership Corp.,* 405 N.E.2d 630, 633 (Ind.Ct.App.1980).

Here, American States clearly established by designated materials that the Bonneville was not listed in the policy and, therefore, it did not fall under that definition of a "covered auto." This was prima facie evidence that was sufficient to demonstrate the Bonneville was not a "covered auto" for purposes of the exclusion. At that point, Earl should have presented evidence demonstrating the Bonneville fell under another definition of "covered auto," specifically that it was a "temporary substitute," if such evidence existed. Having failed to do so, there is no issue of material fact to rebut American States' prima facie showing that the Bonneville was not a "covered auto."

Earl next claims that the definition of "you" and "your" is ambiguous, and that Exclusion B(2) should be read in this case to exclude coverage only for any vehicle that was made available for *Jeanne's* regular use, as opposed to *Brian's;* thus, the exclusion would not apply because the vehicle Jeanne was driving at the time of the accident was not available for her regular use personally. Earl cites our decision in *Indiana Ins. Co. v. O.K. Transport, Inc.,* 587 N.E.2d 129 (Ind.Ct.App.1992), *trans. denied,* as controlling in the present case.

We disagree with American States' characterization of Earl's argument on this point as "nonsensical." Appellee's Brief p. 15. We do believe *O.K. Transport* is distinguishable and does not require us to reverse summary judgment here, particularly because Earl was not a party to the insurance contract and we are viewing the policy in a neutral manner. In *O.K. Transport,* we held that where an insurance policy's "named insured" provision listed a corporation and a partnership as insureds, it was ambiguous with respect to whether the benefits of the policy applied to the corporation and partnership separately and individually, or as one single entity. *Id.* at 131–32. Thus, we affirmed the trial court's decision to construe the policy in favor of coverage under a non-owned auto provision where an employee of the corporation was driving a vehicle owned by the partnership, but not explicitly covered by the policy, at the time of the accident; if the corporation and partnership had been considered a single entity, ownership of the vehicle would have been effectively imputed to the corporation and no coverage would have been available because the vehicle would not have been "nonowned." We cited conflicting cases from other jurisdictions for "the proposition that reasonably intelligent people can differ about the sweep of 'named insured' definitions." *Id.* at 132.[2] We also concluded that "[t]he language of the policy does not reveal to us whether the two entities named were to be considered as a single entity or as two separate entities." *Id.* at 131.

---

**2.** For example, the New York Court of Appeals held that where a policy defined "named insured" as the executor of the policy and his wife, the policy unambiguously precluded liability coverage where the husband was driving his wife's car, which was not listed in the declarations, and the policy's definitions of "temporary substitute automobile" and "non-owned auto" for which coverage was provided excluded vehicles owned by the "named insured." *Government Employees Ins. Co. v. Kligler,* 42 N.Y.2d 863, 864, 366 N.E.2d 865, 866, 397 N.Y.S.2d 777, 778 (1977). By contrast, the Supreme Court of South Carolina held in *Baxley v. State Farm Mut. Auto. Liability Ins. Co.,* 241 S.C. 332, 128 S.E.2d 165, 166–67 (1962), that coverage was available where the husband was driving a vehicle owned by his wife but not listed in the declarations because the vehicle was a "temporary substitute," even though the definition of a "temporary substitute" excluded vehicles owned by the "named insured," which was defined to include the husband because he was listed in the declarations as well as his wife.

We do not believe that Exclusion B(2) and the definition of "you" and "your" therein can be reasonably construed against American States, without disturbing the policy's plain language, in such a way as to afford coverage in this situation. Unlike *O.K. Transport*, the dispositive issue here is not the scope of the "named insured" definition. "You" and "your" are the relevant words, and the policy gives them a separate and specific definition to be applied throughout the policy. If we were to construe the phrase "named insured" as insuring Jeanne and Brian Conley separately and individually, rather than jointly, then we might be inclined to agree Exclusion B(2) did not apply here *if* it applied to vehicles made available for the regular use of the "named insured." However, the definition of "you" and "your" includes spouses of the "named insured." If, as in *O.K. Transport*, Jeanne was considered to be insured separately from Brian, he would still be a spouse of Jeanne residing in the same household; thus, because the Bonneville was made available for his regular use, the exclusion applies. If "named insured" is construed as covering Jeanne and Brian jointly, there is no need to proceed to the inclusion of spouses in the definition of "you" and "your," because the fact the Bonneville was made available for Brian's regular use would be effectively imputed to Jeanne as his co-named insured.[3]

In a case purporting to apply Indiana law, the Seventh Circuit has previously acknowledged, in construing policy language similar to that in the present case

that it found unambiguous, the reason behind these types of exclusions: "In effect, the terms of the policy prevent the insured from purchasing an insurance contract to cover the risk of operating one vehicle, and obtaining coverage on another vehicle that is regularly used *in the household.* This is a valid and understandable insurance provision." *Farber v. Great American Ins. Co.*, 406 F.2d 1228, 1232 (7th Cir.1969) (emphasis added). We believe the language of American States' policy reveals the parties' intent that coverage would be similarly restricted.

Finally, Earl asserts that if American States unambiguously wished to exclude coverage in the present situation, Exclusion B(2) should have excluded coverage for "any vehicle, other than 'your covered auto,' which is furnished or available for your regular use *or for the regular use of any insured.*" Appellant's Brief p. 23. This argument has two flaws. First, the underlined language would be redundant; "your" has already been clearly defined elsewhere in the policy to included named insureds and their spouses. Second, the underlined language would actually make the exclusion more broad than it is as currently written. "Insured" has a separate definition in the policy apart from "your" and "named insured" that includes additional persons or entities and is, therefore, broader and Earl's proposed language would permit American States to exclude coverage in more situations than it presently can. We believe Earl's proposed language would make the exclusion more ambiguous.

3. Earl also claims that reversal is required by *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136 (Ind.Ct.App.1981). We disagree. That case involved a dispute over a fire loss claim filed under a homeowner's insurance policy by a so-called "innocent spouse" where the other spouse intentionally set the fire. The majority's primary basis for holding the "innocent spouse" was entitled to coverage was that the exclusionary clause advanced by the insurer, which voided the policy in the event of willful concealment, misrepresentation, or fraud or false swearing, was not applicable because the spouse who set the fire

died in that fire and thus there was no concealment, misrepresentation, or fraud concerning the fire, because the innocence of the "innocent spouse" was stipulated. *Id.* at 138–39. The majority then declined to imply an exclusionary clause to prevent the "innocent spouse"'s recovery. *Id.* at 141. Even Judge Staton, in his concurring opinion that admittedly lends some support to Earl's argument, stated that "[i]t must be emphasized that the holding of this Court should be limited to the facts of the present case." *Id.* at 148.

## Conclusion

Earl failed to present any designated evidence to refute American States' prima facie sufficient factual showing that Exclusion B(2) applied. Exclusion B(2) may not be given a reasonable construction that would make it inapplicable in this case. Accordingly, there are no disputed issues of material fact, and American States is entitled to judgment as a matter of law.

Affirmed.

BAKER, J., and BROOK, J., concur.