**AMERICAN FAMILY INSURANCE COMPANY, Appellant– Defendant,**

v.

**GLOBE AMERICAN CASUALTY COMPANY, Appellee– Plaintiff.**

No. 49A04–0204–CV–163.

Court of Appeals of Indiana.

Sept. 10, 2002.

---

Renee A. Faught, Indianapolis, IN, for Appellant.

Lawrence M. Hansen, Janet Marin Prather, Skiles Hansen Cook & Detrude, Indianapolis, IN, for Appellee.

## OPINION

SHARPNACK, Judge.

American Family Insurance Company ("American Family") appeals the trial court's grant of summary judgment to Globe American Casualty Company ("Globe"). American Family raises three issues, which we consolidate, reorder, and restate as follows:

I. Whether the trial court erred by granting Globe's motion for summary judgment because Larry King was not an "insured person" or driving an "insured car" under the insurance policy; and

II. Whether the trial court erred by granting Globe's motion for summary judgment because the SR 22 Form[1] provided by Globe certified that King had an operator's policy of insurance "applicable to any non-owned vehicle," which conflicted with King's insurance policy provisions that required that nonowned vehicles be driven with the express permission of the vehicle's owner.

We affirm.

The facts most favorable to American Family follow. On June 20, 2000, Rui Chen died after being struck by a vehicle driven by Larry King. At the time of the accident, King was intoxicated and was driving a 1980 Pontiac owned by his mother, Leota King. As a result of the accident, King pleaded guilty to operating a vehicle while intoxicated causing death, a class C felony,[2] and to failure to fulfill duties following an accident involving death, a class C felony.[3]

King was insured by Globe at the time of the accident under a policy in effect from January 20, 2000 to July 20, 2000. When King sought coverage under the Globe policy, Globe filed a complaint for declaratory judgment claiming that it was not obligated to provide insurance coverage for damages resulting from the accident. Globe then filed a motion for summary judgment. Chen was insured by American Family at the time of the accident. American Family filed a motion to intervene in the declaratory judgment action which the trial court granted. Ameri-

---

1. The SR–22 Form is an insurance certification required of certain drivers under Indiana's Financial Responsibility Act. *See* Ind.Code §§ 9–25 & 9–30–10–13.

2. Ind.Code § 9–30–5–5.

3. Ind.Code § 9–26–1–8(a)(2).

can Family opposed Globe's motion for summary judgment and filed a cross-motion for summary judgment. However, the trial court granted Globe's motion for summary judgment and denied American Family's cross-motion for summary judgment. Additional facts will be provided as necessary.

American Family argues that the trial court erred by granting Globe's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 452 (Ind.Ct.App.2000). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo." *Id.* The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d 311, 313 (Ind.Ct.App.1999), *trans. dismissed.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

█ This case requires us to interpret an insurance policy. Insurance policies are governed by the same rules of construction as other contracts. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind.2000). "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract." *Burkett*, 737 N.E.2d at 452. We construe the insurance policy as a whole and consider all of the provisions of the contract and not just individual words, phrases, or paragraphs. *Id.* If the language is clear and unambiguous, we give the language its plain and ordinary meaning. *Id.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Bosecker*, 724 N.E.2d at 244. However, "[a]n ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." *Burkett*, 737 N.E.2d at 452. We also must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions. *Id.* Additionally, the power to interpret contracts does not extend to changing their terms, and we will not give insurance policies an unreasonable construction to provide added coverage. *Earl v. Am. States Preferred Ins. Co.*, 744 N.E.2d 1025, 1027 (Ind.Ct.App. 2001), *reh'g denied, trans. denied.* The proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *Bosecker*, 724 N.E.2d at 243.

█ American Family argues that the conflicting provisions of the insurance policy and the SR 22 Form create an ambiguity. Further, American Family argues that as a result of the ambiguity, we should construe the contract against Globe and

"in the light most favorable to [King]." Appellant's Brief at 23. Generally, "[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer" and the policy language is viewed from the standpoint of the insured. *Bosecker*, 724 N.E.2d at 244. However, when a case involves a dispute between a third party and an insurer, as it does here, we determine the general intent of the contract from a neutral stance. *Burkett*, 737 N.E.2d at 452; *see also Earl*, 744 N.E.2d at 1027.

## I.

The first issue is whether the trial court erred by granting Globe's motion for summary judgment because Larry King was not an "insured person" or driving an "insured car" under the insurance policy. The insurance policy provides that "We will pay damages for which any **insured person** is legally liable because of **Bodily Injury** . . . or **Property Damage** . . . arising out of the ownership, maintenance or use of an **insured car**." Appellant's Appendix at 23 (emphasis in original).

▆ Globe first argues that King was not an "insured person" under the policy. The policy defines "insured person," in pertinent part, as: "With respect to a **car** not owned by **you**, to be an **insured person you** must be using the **car** with the express permission of the owner and within the scope of such permission." *Id.* (emphasis in original). The vehicle driven by King at the time of the accident was a Pontiac car owned by his mother, Leota. In early 2000, when the vehicle driven by King's wife, Barbara, had mechanical problems, Leota permitted Barbara to drive the Pontiac. Barbara later purchased a new vehicle. However, Leota did not ask Barbara to return the Pontiac. Leota did not know that King would be driving her car on the date of the accident. When she loaned the car to Barbara, it was her understanding that Barbara would drive

the car "[u]ntil her car was repaired." *Id.* at 61. Although Leota never told Larry that he was not allowed to drive the car, she loaned the car "[o]nly to Barbara." *Id.* at 61–62.

Our supreme court has previously recognized that mere silence on the part of the named insured may be sufficient to establish implied permission for another to operate the insured's automobile in some circumstances. *Am. Employers' Ins. Co. v. Cornell*, 225 Ind. 559, 566, 76 N.E.2d 562, 564–65 (1948). Similarly, Leota's silence may have been sufficient to establish that King had implied permission to use the vehicle. However, the Globe policy required Leota's express permission to operate the car before coverage would result under the policy. King did not have Leota's express permission. Thus, King did not qualify as an "insured person" under the policy. *See, e.g., Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 107 (Ind.1997) (holding that driver was not insured under the insurance policy because he was not using the vehicle with the owner's express or implied permission as required by the policy).

Globe also argues that King was not driving an "insured car." The policy defines an insured car as:

a. A **car** described in the Declarations.

b. A "**replacement car**" or "**additional car**" if **you** ask **us** to insure it within 30 days after **you** lease it or become its owner.

c. A **utility trailer you** own. . . .

d. Any **car** or **utility trailer** while being temporarily used with the owner's permission if such **car** or **utility trailer** is not owned or leased by **you** or any person living in **your** household and is not available for **your** regular use or such other person's regular use.

Appellant's Appendix at 22 (emphasis in original). "You" and "your" are defined to

"mean the insured named in the Declarations and spouse if living in the same household." *Id.* It is undisputed that the Pontiac was not described in the policy's declarations. It is also undisputed that the Kings did not lease the Pontiac or own it. In addition, the car was not a utility trailer. Thus, only section d. is at issue.

Globe argues that section d. is not applicable because the Pontiac was available for Barbara's regular use. Leota first loaned the Pontiac to Barbara in early 2000. Even though Barbara purchased a new vehicle, Leota did not request that the Pontiac be returned. Rather, the Kings still had the vehicle in their possession in June of 2000 at the time of the accident. Thus, the vehicle was available for Barbara's regular use. Consequently, the vehicle did not qualify as an "insured car" under the Globe policy. *See Earl,* 744 N.E.2d at 1029 (holding that the insurance policy's "available for regular use" exclusion applied to preclude coverage).

Because of our resolution of the "insured person" and "insured car" issues in favor of Globe, we need not address the parties' arguments regarding the policy's exclusion for damages resulting "from the intentional or criminal acts of an **insured person.**" Appellant's Appendix at 23 (emphasis in original). Because King's insurance policy did not cover the Pontiac he was driving, we must determine whether the terms of the insurance policy could be expanded by the language on the SR 22 Form issued to King by Globe.

## II.

The second issue is whether the trial court erred by granting Globe's motion for summary judgment because the SR–22 Form provided by Globe certified that King had an operator's policy of insurance "applicable to any non-owned vehicle," which conflicted with King's insurance policy provisions that required that nonowned vehicles be driven with the express permission of the vehicle's owner. Appellant's Appendix at 94. American Family argues that because Globe certified on the SR–22 Form that King was insured with an operator's policy "applicable to any non-owned vehicle" and King was driving a nonowned vehicle, Globe was required to provide coverage for this accident. Globe argues that the SR–22 Form cannot override the policy provisions which provide certain limitations on coverage for nonowned vehicles.

 King was required to provide the completed SR–22 Form pursuant to Indiana's Financial Responsibility Act. *See* Ind.Code § 9–25. The Financial Responsibility Act "compels motorists to make provisions for the protection of other drivers on the road in order that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery." *Fed. Kemper Ins. Co. v. Brown,* 674 N.E.2d 1030, 1035 (Ind.Ct. App.1997), *reh'g denied, trans. denied.* Indiana Code § 9–25–4–5 "outlines the minimum amounts of financial responsibility required for persons who register or operate motor vehicles on Indiana roads, streets or highways." *United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 n. 8 (Ind.1999)

The Financial Responsibility Act requires certain persons who have had their driving privileges suspended to file an SR–22 certification before they may obtain an Indiana driver's license. *See* Ind.Code § 9–30–10–13 (requiring an habitual traffic violator whose driving privileges are suspended to file proof of financial responsibility with the Bureau of Motor Vehicles before a driver's license may be issued and requiring the driver to maintain the proof for three years). The Bureau of Motor Vehicles defines the SR–22 Form as a form:

used for proof of financial responsibility by drivers who have been convicted of

an offense which requires the driver to maintain financial responsibility for a three (3) year period. Such violations are, but not limited to: OWI, Operating Per Se, Leaving the Scene of an Accident. The form must be filed with the Bureau for three years from the date determined by the Bureau.

Indiana Bureau of Motor Vehicles, *Suspensions: Driver Improvement and Safety Responsibility*, at *http://www.in.gov/bmv/ticketsandsuspensions/driverimprove.html* (last visited July 24, 2002). The State of Indiana determined the standard language of the SR–22 Form.

The SR–22 Form permits an insurance company to certify that the driver has either an "operator's policy," an "owner's policy," or both. Although the policies are not defined by the statute, Ind.Code § 9–25–5–7 provides that "[w]henever a person required to give proof of financial responsibility under section 3 of this chapter is not the owner of a motor vehicle, an operator's policy of liability insurance is sufficient proof of financial responsibility." Further, "[w]henever a certificate is filed showing that a policy has been issued covering all motor vehicles owned by an insured but not insuring the person when operating a motor vehicle not owned by the person, it is unlawful for the person to operate a motor vehicle not owned by the person or not covered by the certificate." Ind.Code § 9–25–6–12(a). If the driver desires to "be permitted to drive another motor vehicle, the person who owns the motor vehicle may have the restriction removed upon filing a certificate showing that an operator's policy of liability insurance has been issued to the person." I.C. § 9–25–6–12(b). Thus, generally, an owner's policy applies to vehicles owned by the insured and an operator's policy applies to vehicles not owned by the insured.

Globe issued an insurance policy to King that provided both owner's coverage and operator's coverage. However, the policy specified that the operator's coverage applied only where King was driving a non-owned vehicle "with the express permission of the owner and within the scope of such permission." Appellant's Appendix at 23. Globe then issued an SR–22 Form to King that provided, in pertinent part, as follows:

This certification is effective from **7/20/99** and continues until canceled or terminated in accordance with the financial responsibility laws and regulations of this state.

The insurance hereby certified is provided by an:

**XX** OWNER'S POLICY: Applicable to (a) the following described vehicle(s), (b) any replacement(s) thereof by similar classification, and (c) any additionally acquired vehicles of similar classification for a period of at least 30 days from the date of acquisition.

| Model Year | Trade Name | Identification No. |
|---|---|---|
| 1986 | **Mercury Topaz** | **2MEBP75X9GB614734** |
| 1986 | **Chevy Truck** | **1GCDC14H1GF307425** |

**XX** OPERATOR'S POLICY—applicable to any non-owned vehicle

**Indiana** SR–22 FINANACIAL RESPONSIBILITY INSURANCE CERTIFICATE

The company signatory hereto hereby certifies that it has issued to the above named insured a motor vehicle liability policy as required by the financial responsibility laws of this state, which policy is in effect on the effective date of this certificate.

Appellant's Appendix at 94 (emphasis added to indicate portions of the form filled out by Globe).

■ Ordinarily, "the presentation of a certificate alone does not create coverage or legal duties." *G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co.*, 102 F.Supp.2d 300, 304 (D.Md.2000). This is the case because "the purpose of issuing a certificate of insurance is to inform the recipient thereof that insurance has been obtained; the certificate itself, however, is not the equivalent of an insurance policy." *Postlewait Construction Co. v. Great Am. Ins. Co.*, 106 Wash.2d 96, 720 P.2d 805, 807 (1986). In fact, "it has even been stated that a certificate of insurance cannot contradict the terms of a policy." Appleman, John & Jean Appleman, 13A *Insurance Law and Practice* § 7530 (Supp.2002).

However, in this State, Ind.Code § 9–25–5–8 provides that the "issuance of a certificate to serve as proof of financial responsibility under this chapter is conclusive evidence that a motor vehicle liability policy in the certificate cited conforms to all the requirements of this article." Thus, an insurer's issuance of an SR–22 Form is "conclusive evidence" that a policy has been issued that meets the requirements of the Financial Responsibility Act.

American Family does not allege that the Globe policy does not conform to the requirements of the Financial Responsibility Act. Rather, American Family argues that the "applicable to any non-owned vehicle" language on the SR–22 Form mandates "unqualified coverage." Appellant's Brief at 12. Globe contends that American Family's position would "reward those with the worst driving records with coverage far above and beyond that which other drivers could ever enjoy." Appellee's Brief at 20. Further, in Globe's view, "King would enjoy absolute motor vehicle coverage, for no additional premium, sim-

ply because he requested an SR 22 form." *Id.* at 23. However, Globe points out that drivers not required to file an SR–22 would only have coverage under the terms and conditions expressed in the policy. In fact, Globe asserts, although King and his wife were insured by the same policy, King would have received better coverage than his wife simply because he requested an SR–22 certification. Globe argues that such an interpretation is unreasonable. We agree with Globe.

■ American Family cites no Indiana statutory language imposing a duty on an insurer to provide unconditional nonowned vehicle insurance coverage as a result of issuing an SR–22 operator's policy certification. Likewise, our research reveals no such duty. Rather, the purpose of the Financial Responsibility Act is simply "to assure no more than the availability of the statutory minimum amount of coverage." *Fed. Kemper*, 674 N.E.2d at 1036. Coverage for every accident is not guaranteed. *See id.* ("Although Indiana is a compulsory financial responsibility state, accident victims are not guaranteed compensation in every automobile accident."). Moreover, the purpose of the SR–22 Form is simply to provide proof that the insured has obtained a policy that meets the State's financial responsibility requirements. For example, Ind.Code § 9–25–4–8 provides that:

Proof of financial responsibility may be made by filing with the bureau the written certificate of an insurance carrier authorized to do business in Indiana *certifying that the carrier has issued* to or for the benefit of the person furnishing the proof and named as the insured *a motor vehicle liability policy meeting the requirements of this chapter and having the terms, conditions, and specifications that the bureau requires.*

(emphasis added). Additionally, Ind.Code § 9–25–5–9 provides that:

> [w]henever an insurance carrier has *certified a motor vehicle liability policy* under this chapter *for the purpose of furnishing evidence of future financial responsibility,* the insurance carrier shall give ten (10) days written notice to the bureau before cancellation of the policy. The policy continues in full force and effect until the date of cancellation specified in the notice or until the policy's expiration.

(emphasis added). Thus, the purpose of the SR–22 Form is simply to certify that the insured has a policy in force that conforms with the requirements of the Financial Responsibility Act and contains the terms, conditions, and specifications required.

Although the purpose of the SR–22 Form is to provide conclusive proof that coverage in compliance with the Financial Responsibility Act exists, we find no support for the proposition that the SR–22 Form imposes a duty upon the insurer to provide absolute, unqualified coverage for nonowned vehicles. This would require insurers to provide coverage even if King had, for example, stolen a vehicle. Nothing in the Financial Responsibility Act requires such a result.

Our interpretation is supported by *Am. Underwriters, Inc. v. Turpin,* 149 Ind.App. 473, 273 N.E.2d 761 (1971). In *Turpin,* the insured was issued an operator's insurance policy containing the following provision:

> 1. If the license to be issued in consideration of the filing of said Certificate (Form SR–22) by the Division to the person who is the named insured in said policy;
>
> (b) is an 'Operator's License,' it is understood and agreed that such insurance as is afforded under the terms and conditions of said policy for liability or death of any person other than such insured or for liability for damage to property, applies to the named insured with respect to his operation or use of any automobile of which the insured is personally in control as driver or occupant, subject to the following provisions:
>
> 1. That such use is with the permission of any person having the right to grant such permission;
>
> 2. That such automobile is not owned in whole or part by or registered in the name of the named insured....

*Id.* at 475, 273 N.E.2d at 762. The insured had an automobile accident while driving a vehicle that he owned and the insurer refused coverage. *Id.* The issue before us was whether an operator's only endorsement was contrary to public policy. *Id.* at 477, 273 N.E.2d at 763. We held that the legislature intended to permit such exclusionary clauses rather than require absolute coverage.[4] *See id.* at 477–478, 273 N.E.2d at 764 (relying upon Ind.Code § 9–2–1–5[5] which provided that "the liability of the insurance carrier under a motor vehicle liability policy which is furnished for proof of financial responsibility in the future as set out in this act shall become

---

**4.** American Family and Globe both rely upon *Turpin* and advance differing interpretations of the case. American Family argues that *Turpin* stands for the proposition that the coverage certified on the SR–22 Form is absolute. American Family's interpretation is misplaced. Rather, *Turpin* stands for the proposition that under this State's financial responsibility statutes the issuance of an oper-

ator's policy is not against public policy and such a policy may include exclusionary clauses. *Turpin,* 149 Ind.App. at 477–478, 273 N.E.2d at 764.

**5.** Ind.Code § 9–2–1–5 was repealed and the pertinent language is now included in Ind. Code § 9–30–4–6(d)(2).

absolute whenever loss or damage covered by such policy occurs"). Thus, the Financial Responsibility Act does not require absolute coverage.

■ For the foregoing reasons, the language on the SR 22 Form cannot be taken to require absolute coverage of any nonowned vehicle driven by King. In light of our disposition of the issues above, we conclude that no genuine issues of material fact existed and Globe was entitled to summary judgment as a matter of law. Thus, the trial court did not err by granting summary judgment in favor of Globe. *See, e.g., Earl,* 744 N.E.2d at 1030.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Globe.

Affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.