

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-CR-217

## William R. Grimes,
*Appellant,*

—v—

## State of Indiana,
*Appellee.*



FILED
Jun 26 2024, 12:08 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Argued: January 25, 2024 | Decided: June 26, 2024

Appeal from the Sullivan Superior Court
No. 77D01-2212-F2-741
The Honorable Hugh R. Hunt, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CR-656

**Opinion by Justice Slaughter**

Chief Justice Rush and Justice Molter concur.
Justice Goff dissents with separate opinion in which Justice Massa joins.

**Slaughter, Justice.**

Indiana Criminal Rule 4 balances two competing interests: a criminal defendant's constitutional right to a speedy trial and a trial court's need for flexibility in managing its calendar. The rule requires the State to try defendants in a prompt manner but also permits trial courts to reschedule trials in case of calendar "congestion" or an "emergency". Ind. Crim. Rule 4(B)(1). When a trial court postpones a criminal trial due to congestion and the defendant objects, we apply a burden-shifting test. Our test first gives deference to the trial court's initial finding of congestion. But if the defendant presents a prima facie case that the court's congestion finding is inaccurate, we shift the burden to the trial court to explain why its calendar required continuing the trial. If the court fails to meet its burden, the defendant is entitled to have the State's claim against him dismissed or discharged.

Here, we hold the defendant is entitled to discharge. He met his burden to show a prima facie case of no court congestion when he submitted the court's docket showing no other scheduling conflicts with priority over his criminal trial. This showing shifted the burden to the trial court to explain the postponement. But the trial court failed to meet even this low bar because it gave no explanation when it denied the defendant's motion for discharge. We grant transfer and reverse and remand with instructions.

I

A

The State charged defendant, William R. Grimes, with multiple crimes after a disagreement between Grimes and Matthew Pirtle turned violent. In September 2022, Grimes was sleeping in his own car near Pirtle's home. Pirtle knew Grimes because he was good friends with Grimes's father. Pirtle grabbed his .17-caliber, bolt-action rifle, which was loaded with five bullets, and approached Grimes's vehicle. Pirtle confronted Grimes and asked him to leave since Grimes did not live in the area. The two engaged in a heated argument, during which Pirtle accused Grimes's girlfriend of trying to steal from him earlier.

The disagreement escalated when Grimes took Pirtle's rifle. They continued to argue, and then Pirtle started walking away. As Pirtle was leaving, Grimes came from behind and hit him in the back of the head with the butt of Pirtle's rifle. Pirtle fell unconscious long enough for Grimes to get into his car and drive away with the rifle.

B

After this incident, the State charged Grimes with theft, a level 5 felony; battery resulting in bodily injury, a class A misdemeanor; and unlawful possession of a firearm by a serious violent felon, a level 4 felony. At the initial hearing on October 13, Grimes requested a speedy trial under Criminal Rule 4, which the trial court granted. The court then set the trial date for December 13, which was within seventy days after Grimes filed his motion, as Rule 4 requires. Crim. R. 4(B). Throughout the pre-trial period, Grimes remained in custody.

In late November, twenty-two days before trial, the State added a habitual-offender-enhancement charge against Grimes. The State also added yet another charge, robbery resulting in bodily injury, a level 3 felony. Then on November 23, the State moved to continue the trial date because prosecutors would be at an annual conference the week before the December 13 trial date. The trial court granted the motion, moving the trial date to December 19, which was still within seventy days of Grimes's speedy-trial request.

Then in early December, seventeen days before this new trial date, the trial judge issued an order informing the parties that he was the prosecuting attorney in one of the underlying convictions for the habitual-offender charge. Because this created a conflict of interest, the judge transferred the case from Sullivan Circuit Court to Sullivan Superior Court.

Shortly after the case was transferred, the new trial judge issued an order on December 6 continuing the jury trial from December 19 to January 25, 2023, "[d]ue to Court congestion". The new trial date was 104 days after Grimes's October 13 request for a speedy trial. The new judge did not explain further why he continued the trial. Grimes received notice

of this continuance a day later and immediately objected in writing, arguing he "should not be prejudiced due to the transfer of the case". Without explanation, the trial court overruled the objection.

Pre-trial proceedings continued as the seventy-day deadline to try Grimes neared. On December 14, the State amended two charges. It replaced the level 3 felony robbery resulting in serious bodily injury with a level 2 felony, and it replaced the class A misdemeanor battery resulting in serious bodily injury with a level 5 felony. Then on December 19, the State moved for appointment of a special prosecutor because the prosecuting attorney then assigned to Grimes's case participated as a magistrate judge in one of the felonies underlying the habitual-offender charge. The court granted the State's motion.

On December 21, Grimes filed a motion for discharge under Indiana Criminal Rule 4, challenging the trial court's finding of calendar congestion when it moved his trial. Grimes explained that on December 15, he obtained certified copies of the court's docket for December 19 to 21, which revealed that no jury trials were scheduled for those days. Grimes also learned from the trial clerk that no jurors were summoned for jury duty for that time. A bench trial in another case was scheduled for December 20. But the defendant in that case was not in custody and did not request a speedy trial. Thus, Grimes argued, his case should have received priority scheduling. While his motion stated the seventy-day deadline was December 20, in fact the seventieth day after his October 13 speedy-trial request was December 22. Again, the trial court denied Grimes's motion without explanation.

Before his jury trial started on January 25, Grimes renewed his speedy-trial objection, which the court again denied. At trial, the jury found Grimes guilty of battery, a level 5 felony; theft, a level 5 felony; possession of a firearm, a level 4 felony; and the habitual-offender enhancement. The court sentenced him to five years on the battery count, five years on the theft count, ten years on the firearm-possession count, and twenty years on the habitual-offender enhancement, all to be served consecutively for a total of forty years.

Grimes appealed the denial of his motion for discharge, and the court of appeals affirmed. *Grimes v. State*, No. 23A-CR-656 (Ind. Ct. App. Sept. 5, 2023) (mem.). The appellate panel held that Grimes failed to show he was entitled to discharge because he presented no evidence that the trial court's congestion finding was clearly erroneous on the date it continued the trial. *Id.* at *6–8.

Grimes then sought transfer, which we now grant, thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

## II

Criminal Rule 4 implements a criminal defendant's constitutional right to a speedy trial. U.S. Const. amend. VI; Ind. Const. art. 1, § 12; Crim. R. 4. Rule 4 places the onus on the State to bring defendants to trial and gives them a procedure to invoke their speedy-trial right. *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013). The rule is not meant to give defendants a "technical means to avoid trial but rather to assure speedy trials." *Cundiff v. State*, 967 N.E.2d 1026, 1028 (Ind. 2012).

Under Rule 4, a defendant may move for a speedy trial, which obliges the State to bring the defendant to trial within seventy days, or else the defendant is "discharged". Crim. R. 4(B)(1) (effective to Dec. 31, 2023). But this obligation has exceptions. A court may delay the start of trial past the seventy-day window due to congestion of the court's calendar or an emergency. *Ibid.* Though we recently amended the rule, its substance as relevant here remains unchanged. See Crim. R. 4 (effective Jan. 1, 2024). The prior rule said the defendant must be "discharged"; the current rule says he must be "dismissed". Compare Crim. R. 4(B)(1) (effective to Dec. 31, 2023), with Crim. R. 4(B) (effective Jan. 1, 2024). Because Grimes moved for discharge before we amended the rule, all references to the rule throughout this opinion are to the version effective to December 31, 2023—the version, that is, providing the remedy of "discharge". That said, our opinion today applies with equal force to the current version of Criminal Rule 4.

Here, both the congestion and emergency exceptions are at play—the trial court cited court congestion when it delayed Grimes's trial, and the

State raises the emergency exception as an alternative basis to affirm the trial court's judgment. First, we hold the trial court erred in denying Grimes's motion for discharge because his motion made an unrebutted prima facie case that the court's congestion finding was erroneous. Then, we hold the State's alternative emergency-exception argument is waived.

A

We use a burden-shifting test to evaluate a trial court's decision to reschedule a trial past the seventy-day deadline for calendar congestion. We provide a roadmap below for both defendants and trial courts to navigate this test. We then apply the roadmap here, finding that Grimes made a prima facie case for discharge, and the trial court failed to rebut that showing. Because Grimes made a prima facie case, we afford no deference to the trial court's summary order postponing his trial due to congestion. Grimes is thus entitled to discharge.

1

The burden-shifting test starts with the trial court's order finding the court's schedule is congested and continuing the trial date. A trial court may order a continuance due to congestion without providing further explanation. *Austin*, 997 N.E.2d at 1039 (quoting *Clark v. State*, 659 N.E.2d 548, 552 (Ind. 1995)). This finding is presumed correct and reviewed for clear error. *Ibid.* (quoting *Clark*, 659 N.E.2d at 552). The burden then shifts to the defendant to object and rebut the court's congestion finding.

The defendant has two steps to meet his burden. First, the defendant must object at the "earliest opportunity" when the trial court continues the trial. *Smith v. State*, 477 N.E.2d 857, 861–62 (Ind. 1985). At this point, the defendant may present evidence to convince the court it must schedule the trial within the seventy-day deadline, thus preventing a speedy-trial violation in the first place. See *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000) (noting defendants must object to a Criminal Rule 4 violation to "facilitate[] compliance by trial courts with the speedy trial requirement"). Second, if the seventy-day deadline passes without a trial, the defendant must move for discharge. *Clark*, 659 N.E.2d at 552. To succeed on this

motion, the defendant must show that the court's congestion finding was "factually or legally inaccurate" when it continued the trial. *Ibid.*

The level of the defendant's burden depends on whether the court gives a factual basis for finding court congestion in its continuance order or in response to the defendant's discharge motion. If the court does not explain its congestion finding, the defendant need only make a prima facie case for discharge. *Ibid.* This is a low bar. But once the defendant makes a prima facie case, the burden then shifts back to the trial court to explain its congestion finding. If the trial court gives no further explanation, the defendant is entitled to discharge. *Austin*, 997 N.E.2d at 1042. But if the court explains its finding, either in its continuance order or in response to the defendant's discharge motion, the defendant must show the trial court's finding was clearly erroneous. *Clark*, 659 N.E.2d at 552. This is a much steeper burden for the defendant.

2

Here, the trial court did not explain its congestion finding in its order continuing the trial date. Grimes thus needed to make only a prima facie case in his motion for discharge, which he did. Because the trial court did not provide further findings in response, Grimes is entitled to discharge.

a

At the first step of the test, the trial court met its initial burden when it issued its order continuing the trial. While the trial date was initially set for December 19, within the seventy-day limit, the trial court on its own motion moved the trial to January 25 because of calendar congestion. The court did not explain how its calendar was congested, but this summary finding was enough to shift the burden to Grimes to object at the outset and then show in a discharge motion that the finding was legally or factually inaccurate. *Ibid.*; *Smith*, 477 N.E.2d at 861–62. Because the court's order included no explanation, Grimes had to make only a prima facie case to meet his burden for discharge. *Austin*, 997 N.E.2d at 1042.

An alternative option, and the preferable one, would have been for the trial court to provide the factual basis for finding congestion in its initial continuance order. At each step of the process, the trial court's burden is

low. It need not include a factual basis in its initial continuance order, and we defer to a court's explanation in response to a discharge motion. *Clark*, 659 N.E.2d at 552. Even so, we encourage trial judges to take a few extra moments and include the factual basis in their initial continuance order.

Adding a factual basis in the initial order serves two functions. First, with the heavy docket many trial courts face, judges may forget the reason for a continuance when they rule on a discharge motion days or weeks later. Including the basis for continuance helps judges remember at the later date what prompted the continuance. Second, giving a factual basis tells defendants what they must disprove to obtain a discharge. Indeed, if a defendant finds the court's explanation satisfactory, he may decide not to move for discharge at all. After all, if the judge provides a detailed explanation in the continuance order, the defendant's burden to challenge the ruling in a later motion for discharge increases significantly. Had the court here explained its congestion finding, Grimes would have had to make more than a prima facie case; he would have had to prove clear error. *Ibid.*

Though including a factual basis in the court's initial continuance order is preferable, it is not necessary. The court here found court congestion when continuing Grimes's trial. This was enough to shift the burden to Grimes to rebut the court's finding.

b

When the court continued his trial past the seventy-day deadline, Grimes had to clear two hurdles to be discharged. First, he had to object at the earliest opportunity. *Smith*, 477 N.E.2d at 861–62. Grimes met this first hurdle by filing an objection the same day he received notice of the continuance. Though the trial court overruled his objection in a summary order, Grimes preserved his objection for discharge in the future.

Second, once the court denied his objection, Grimes had to make a prima facie case in his motion for discharge. *Austin*, 997 N.E.2d at 1042. Grimes cleared this hurdle as well. To make a prima facie case, a defendant may submit the court's docket and show a date when the defendant's trial could have occurred before the seventy-day deadline.

*Ibid.* The issue here is whether attaching a copy of the trial court's docket that was obtained **after** the trial court ordered the continuance (as Grimes did here) is enough to make out a prima facie case. We hold that it is, and that Grimes met this low burden here.

i

In his discharge motion, Grimes attached a court docket to show an opening in the court's schedule, but the docket he submitted was dated December 15, which was nine days after the December 6 continuance order. The relevant time to assess court congestion is when the court issued the continuance. *Clark*, 659 N.E.2d at 552. A defendant must show the congestion finding was incorrect "at the time the trial court made its decision to postpone trial". *Ibid.* While a docket from the same day that the trial court issued its continuance order would be ideal, a post-dated docket obtained before the seventy-day speedy-trial deadline can be enough to make a prima facie case.

Prima facie means "such evidence as is sufficient to establish a given fact and which will remain sufficient if uncontradicted." *Johnson v. State*, 283 N.E.2d 532, 534 (Ind. 1972). Prima facie does not mean "conclusive". *Earl v. Am. States Preferred Ins. Co.*, 744 N.E.2d 1025, 1028 (Ind. Ct. App. 2001) (quoting *Floyd v. Jay Cnty. Rural Elec. Membership Corp.*, 405 N.E.2d 630, 633 (Ind. Ct. App. 1980)), trans. denied. To be sure, the defendant must show the court's congestion finding was incorrect when the court continued the trial. But with no conflicting evidence, a later docket can reflect the court's schedule as of the continuance date. If the court's schedule often changes, and its schedule on the continuance date had no openings, then the court can provide this information after the defendant presents his prima facie case. But the defendant need not in the first instance prove conclusively that the docket reflects the court's schedule on the continuance date. After all, it is not the defendant but the court that controls and has ready access to this information. Here, Grimes's tendered docket from December 15—a full seven days before the December 22 speedy-trial deadline—is enough to cast doubt on the court's congestion finding.

The State would require that the defendant either pull the court's schedule as of the date the court ordered the continuance or submit testimony from a court clerk about the court's schedule on that date. This case is a good example of why we do not require defendants to obtain dockets as of the day of the continuance order. Here, the trial court issued its order on December 6, but Grimes did not receive notice of this order until the next day. Thus, it was impossible for Grimes to obtain the court's docket the day of the order. Under the State's standard, Grimes's only practical option would be to submit testimony from court staff. But such measures are unnecessary to establish a prima facie case, which requires only sufficient, not conclusive, evidence.

The State cites only *Truax v. State* as an example of the court of appeals imposing the State's proposed standard. 856 N.E.2d 116, 121 (Ind. Ct. App. 2006). But in citing *Truax*, the State confuses the prima facie and clear-error standards. There, the court of appeals held that a docket pulled nine months after the trial court ordered the continuance did not show that the trial court's congestion finding at the time of the continuance was inaccurate. *Ibid.* But *Truax* did not address what a defendant must prove to make a prima facie case. The trial court there explained its congestion finding. *Id.* at 120. Thus, to meet his burden, the defendant had to show clear error. *Ibid. Truax* does not prescribe what evidence may establish a prima facie case for discharge. Besides, *Truax* is factually distinct. The docket was dated nine months after continuance and eight months after the speedy-trial deadline. *Id.* at 120–21. With this significant time gap, the docket in *Truax* was far less likely to reflect the trial court's schedule as of the date of continuance than the docket here.

Finally, the State's proposed prima facie standard is untenable as a practical matter. The State acknowledges that trial courts handle their scheduling in "a number of different ways". In other words, there is no guarantee a defendant could belatedly re-create the court's schedule as of the date of continuance. But the defendant needs a "reasonable opportunity to demonstrate violations of the rule and to obtain the relief provided therein." *Clark*, 659 N.E.2d at 551. A defendant does not have a "reasonable opportunity" if his counsel must drop all other responsibilities and obtain the court's docket the day the trial court orders

a continuance. The State's approach would require the defendant to obtain testimony from court staff about the court's schedule the day of the continuance. But to meet the low bar of a mere prima facie case, this kind of evidence is unnecessary. We decline the State's proposed standard for making a prima facie case and hold that a defendant may meet his burden by submitting the court's schedule obtained after the continuance order and before the seventy-day deadline, as is the case here.

ii

Having established that Grimes can submit a docket dated nine days after the trial court ordered the continuance and before the seventy-day speedy-trial deadline, we must decide whether the docket he submitted refutes the judge's finding of congestion. We hold that it does.

To show an opening on the court calendar, a defendant must show that no other cases with priority were scheduled before the defendant's seventy-day deadline to prevent the defendant's trial from taking place. *Ibid.* For example, a criminal case typically has a higher priority than a civil case, unless the civil case involves a long-scheduled, complex trial that poses extenuating circumstances to litigants and witnesses. *Austin*, 997 N.E.2d at 1041. Among criminal cases, one with a defendant who filed a speedy-trial motion takes priority over one with a defendant who did not, and a criminal case with a longer-incarcerated defendant takes priority over one with a more recently charged defendant. *Id.* at 1040–41. To make a prima facie case, the defendant need only show that no trials or hearings with obvious priority were scheduled at a time that would have prevented the defendant's trial from taking place within the seventy-day window.

The court docket Grimes attached to his motion was enough to meet his burden because it showed no other trials or hearings with priority over his trial. While a bench trial was scheduled for December 20, the defendant in that case was not in custody, as bond was posted beforehand, and the defendant did not request a speedy trial. Because no other criminal trials with speedy-trial requests were scheduled from December 19 to 21, Grimes's trial should have received priority. *Ibid.* He thus made his prima facie case.

c

Grimes's prima facie case returned the burden to the trial court to explain its congestion finding. Here, the court's burden was a low bar to meet. But the court denied Grimes's motion with no explanation. We afford this unexplained, bare-bones finding no deference at this juncture. Thus, the trial court failed to meet its burden.

If the trial court had met its burden, Grimes would have had to prove clear error. Showing a congestion finding is clearly erroneous depends on the specific reason the trial court gave for the continuance. See *id.* at 1039 (explaining that "the ultimate reasonableness of the trial court's findings depends very much upon the facts and circumstances of the particular case"). Showing an open court calendar with no other trials with priority scheduled is often necessary but not sufficient to prove clear error. For example, a docket from nine months after a continuance order is not enough to show a trial court's congestion finding is clearly erroneous. *Truax*, 856 N.E.2d at 121. A reviewing court needs more evidence, such as testimony from court staff, that the docket accurately reflects the schedule as of the continuance order. This higher evidentiary burden makes sense because we give the trial court's congestion finding and accompanying explanation great deference. *Austin*, 997 N.E.2d at 1043.

Because Grimes made his prima facie case, and the trial court provided no additional findings on court congestion in response, Grimes is entitled to discharge.

B

Finally, we address the State's alternative argument for affirming the trial court's judgment—the emergency exception under Criminal Rule 4(B)(1). The State argues the need for a special prosecutor was an exigent circumstance that required delaying the trial and resulted from Grimes's refusal to waive the prosecutor's conflict. We are loath to affirm the continuance of a trial for court congestion on a basis the trial court never considered. The State did not request a special prosecutor from the trial court until December 19—after the trial court continued the trial. The State could have raised its emergency-exception argument in response to

Grimes's motion for discharge. Even when the court moves a trial on its own motion, the State must still ensure the defendant's trial is not delayed in error. See *id.* at 1037 (holding State has affirmative duty to bring defendant to trial under Rule 4). The State's failure to raise the issue in the trial court means it is waived. *Harris v. State*, 165 N.E.3d 91, 98 (Ind. 2021).

\* \* \*

For these reasons, we reverse the trial court's judgment and remand with instructions to discharge Grimes.


Rush, C.J., and Molter, J., concur.
Goff, J., dissents with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT WILLIAM R. GRIMES
Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE STATE OF INDIANA
Theodore E. Rokita
Attorney General of Indiana

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana

**Goff, J., dissenting.**

I respectfully disagree with the Court's holding that Grimes carried his burden of showing that the trial court's congestion finding was inaccurate **at the time** it continued the trial. In my view, Grimes failed to meet this burden by submitting a copy of the court's docket dated **nine days** after the court rescheduled trial and by merely alleging, without testimony or affidavit from court staff, that "no jurors were summoned for duty" the week of the original trial date. *See* Appellant's Br. at 12.

A trial must generally begin for an incarcerated defendant within seventy days from the date that he or she moves for an early trial. Ind. Crim. Rule 4(B). The Rule, though, recognizes several exceptions to this deadline, including "delays due to congestion of the court calendar or emergency." *Id.* In *Clark v. State*, this Court created a simple burden-shifting test for determining whether a defendant is entitled to discharge for a speedy-trial violation: When a trial court invokes congestion, without further explanation, as a reason for continuing trial, the defendant may challenge that decision by making an initial, *prima facie* showing that, "at the time" the court ordered the continuance, its finding was "factually or legally inaccurate." 659 N.E.2d 548, 552 (Ind. 1995). A successful showing that no other case required "particularized priority treatment" compels the defendant's discharge unless the trial court offers rebuttal findings to justify the delay (in which case the defendant must show clear error). *Id.* at 551, 552. But until the defendant makes this showing, the court's congestion finding—even one that lacks contemporaneous explanation or documentation—is "presumed valid." *Id.*

The question here is whether submitting a copy of the trial court's docket, as it stood several days **after** the court ordered the continuance, is sufficient to establish a *prima facie* case. *See ante*, at 9.

I would answer this question in the negative. To determine the accuracy of a congestion finding, our precedent considers it "necessary to view the trial court's calendar **on the date** that the court granted the trial continuance." *Truax v. State*, 856 N.E.2d 116, 121 (Ind. Ct. App. 2006)

(emphasis added).[1] *Cf. Clark*, 659 N.E.2d at 552 (holding that the defendant was entitled to discharge by showing "that, **on the day** the trial court made the decision to postpone the trial and enter the order finding congestion, no conflicting jury trial was scheduled and no jurors had been summoned") (emphasis added). Indeed, given the frequency with which a trial court's schedule changes, a docket dated several days **after** the continuance order is not, in my view, presumptively "sufficient to establish a given fact"—here, the state of the court's calendar at the material time. *See ante*, at 9 (quoting *Johnson v. State*, 283 N.E.2d 532, 534 (Ind. 1972)).

To be sure, depending on when the defendant receives notice of the continuance order, it may be difficult to obtain the court's docket on the day it ordered the continuance. But that doesn't mean we should lower the defendant's evidentiary burden. After all, the Rule's purpose is "to assure speedy trials" in line with constitutional protections, **not** to give defendants a "technical means to avoid trial." *Cundiff v. State*, 967 N.E.2d 1026, 1028 (Ind. 2012). And even when delayed notification renders it impossible to secure a copy of the court's docket on the day it ordered the continuance, a defendant may still support a motion for discharge with testimony or affidavits from court staff attesting to the lack of congestion. *Clark*, 659 N.E.2d at 550. This alternative, a relatively easy task for counsel, gives the defendant a "reasonable opportunity to demonstrate violations of the rule and to obtain the relief provided therein." *Id.* at 551.

Still, the Court holds that, given the "low bar" of establishing a *prima facie* case, Grimes is entitled to discharge. *Ante*, at 9, 11. While acknowledging that "a docket from the same day that the trial court issued its continuance order would be ideal," the Court nevertheless

---

[1] I disagree with the Court that *Truax* is inapt. *See ante*, at 10. To be sure, the trial court in that case had explained its congestion finding, requiring the defendant to show clear error. 856 N.E.2d at 120. But with "no evidence" that the court's calendar, "on the date" of the continuance order, showed prospective congestion on the originally scheduled trial date, the defendant there couldn't even make a *prima facie* showing that the court's congestion finding was legally or factually inaccurate. *See id.* at 121.

concludes that, in the absence of "conflicting evidence" that would support a congestion finding at the time of the continuance, "a post-dated docket obtained before the seventy-day speedy-trial deadline" may suffice to establish a *prima facie* case, even when the defendant submits no supporting evidence from court staff. *Id.* at 9, 10.

This holding, in my view, improperly shifts the burden to the trial court, effectively rejecting the presumed validity of the court's initial congestion finding if it lacks contemporaneous explanation or documentation.[2]

Finally, it's worth emphasizing that the trial court, whether on rebuttal or when issuing its initial continuance order, can meet its low burden by offering a simple factual basis to support its congestion finding—*e.g.*, noting the case and cause number requiring priority treatment—and thus avoid cases like this.

For the reasons above, I respectfully dissent.


Massa, J., joins.

---

[2] In concluding that the defendant had met his initial burden of showing an inaccurate congestion finding, this Court, in *Austin v. State*, referred simply to the defendant's motion and "attached exhibits highlighting the trial calendar and apparent scheduling vacancy on August 15," the last day of the speedy-trial window. 997 N.E.2d 1027, 1042 (Ind. 2013). The Court made **no** reference to a date on which the defendant secured a copy of the trial court calendar, *see id.*, suggesting that it **may** have been obtained anytime within a thirteen-day window—from August 4 (when the court continued trial) to August 17 (when the defendant filed his motion). But to conclude that a post-dated copy of the trial court's calendar sufficed requires speculation beyond the facts discussed in that case. And, in any event, the *Austin* Court wasn't presented with the issue before us today.