**INDIANA INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**O.K. TRANSPORT, INC., Oscar Koester & Sons, Johnnie Koester, Wayne L. Jinske and Janice L. Jinske, Appellee–Defendants.**

No. 82A01–9106–CV–167.

Court of Appeals of Indiana, First District.

Feb. 24, 1992.

Rehearing Denied April 7, 1992.

---

David M. Mattingly, Kelly J. Pitcher, Ice, Miller, Donadio & Ryan, Indianapolis, Stephen Hensleigh Thomas, Statham, Johnson

---

& McCray, Evansville, for appellant-plaintiff.

Theodore Lockyear, James A. Kornblum, Lockyear & Kornblum, Evansville, for Wayne L. and Janice L. Jinske.

Fred S. White, Bamberger, Foreman, Oswald & Hahn, Evansville, for O.K. Transport, Inc., Oscar Koester & Sons and Johnnie Koester.

BAKER, Judge.

Plaintiff-appellant Indiana Insurance Company (Indiana) appeals a judgment requiring it pay almost one million dollars on behalf of its insureds, defendant-appellees O.K. Transport, Inc. and Oscar Koester & Sons. Indiana disagrees with the legal conclusions at which the trial court arrived in entering judgment that Indiana was obligated to provide coverage under the policy it issued.

## FACTS

The facts leading to this appeal are not disputed. On March 26, 1986, a 1984 Chevrolet pick-up truck owned by Oscar Koester & Sons and driven by Johnnie Koester collided with a motorcycle operated by Wayne Jinske. The accident was caused by Johnnie Koester, who at the time was acting within the scope of his employment for his employer, O.K. Transport, Inc. Johnnie Koester, Mr. and Mrs. Jinske, and O.K. Transport entered a consent judgment in which Mr. Jinske was awarded $1,250,000, and his wife was awarded $125,000 for loss of services. Travelers Insurance Company carried liability insurance on the pick-up truck in the amount of $250,000, and paid its obligation in that amount. The Jinskes sought the excess unpaid judgment from Indiana based on the business insurance policy Indiana had written listing "OK Transport, Inc., Oscar Koester & Sons" as "named insured." In turn, Indiana sought declaratory relief, and the two actions were consolidated for trial. After the trial court awarded Mr. Jinske $914,654.60 and Mrs. Jinske $65,326.56, this appeal arose.

## DISCUSSION AND DECISION

In this instance the trial court was requested to, and did, enter specific findings of fact and conclusions of law under Ind. Trial Rule 52(B). Accordingly, our review is limited. In reviewing the judgment, we must determine whether the evidence presented supports the findings and whether the findings support the judgment. We reverse the judgment of the trial court only if we find the judgment is clearly erroneous, meaning unsupported by the findings of fact and conclusions of law entered on the findings. We have no imprimatur to reweigh the evidence presented or to reassess the credibility of the witnesses. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665.

In a nutshell, the controversy in this case stems from a dispute about the interpretation of who is the "insured" named in the policy Indiana issued. The policy itself names the insured as "OK Transport, Inc., Oscar Koester & Sons." These are two separate legal entities controlled by the same family.[1] The policy provides liability insurance coverage to the named insured(s) for three classes of automobiles: "specifically described autos," "hired autos only," and "nonowned autos only." "Specifically described autos" are "[o]nly those autos described in ITEM FOUR for which a premium is shown...." Item four of the policies lists three vehicles, none of which is the pick-up truck involved in the accident. "Hired autos" are "[o]nly those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent, or borrow from any of your employees or members of their households." "Nonowned autos" are "[o]nly those autos you do not own, lease, hire, or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs." The 1984 Chevrolet pick-up truck involved in the accident was

1.  O.K. Transport, Inc. is an Indiana corporation engaged in the business of trucking, and Oscar Koester & Sons is a partnership engaged in the business of farming.

owned by Oscar Koester & Sons and was driven by Johnnie Koester, an employee of O.K. Transport engaged in O.K. Transport business at the time of the accident.

The trial court concluded that the named insured(s), "OK Transport, Inc., Oscar Koester & Sons" constituted two separate insured entities, affording each the benefits and obligations of the policy individually. *Record* at 224 (Conclusion of Law No. 5). Consequently, the trial court held the pick-up truck driven by Johnnie Koester as an agent for O.K. Transport but owned by Oscar Koester & Sons was insured because it was a borrowed "nonowned auto" with respect to O.K. Transport. *Record* at 224 (Conclusions of Law No. 6, 7, and 8). The trial court appears to have based this conclusion in part on the policy's severability clause, which reads as follows: "Except with respect to our limits of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought." *Record* at 224 (Conclusion of Law No. 4).

Indiana disputes the trial court's interpretation of the severability clause. It disagrees that the named insured(s) "OK Transport, Inc., Oscar Koester & Sons" must be treated as two separate insureds. "Such an interpretation," it insists, "allows coverage for a non-scheduled vehicle owned by one entity of the insured to be applied under the non-owned or hired provisions as to the other entity, thus defeating the requirement that vehicles owned by the insured be specifically scheduled and a premium paid to afford coverage." *Brief of Appellant* at 13–14. The trial court's construction, it says, defeats the requirement that for the policy to afford coverage to a non-owned or hired vehicle, the vehicle must have been non-owned or hired by someone other than the insured. It argues the trial court's interpretation disserves public policy to the extent it allows insureds "to obtain coverage not paid for or even permit[s] less scrupulous insureds to obtain coverage for vehicles which are purposely not scheduled but claimed as non-owned or hired vehicles."[2] *Record* at 10. Under the clear and unambiguous language of the policy, it continues, the insured is a multiple entity and coverage is not afforded to an unscheduled vehicle owned by any entity comprising the multiple entity.

These arguments are persuasive when one assumes the policy meant to consider O.K. Transport, Inc. and Oscar Koester & Sons as a single unit. This assumption, of course, begs the question. The dispositive issue is whether the benefits of the policy apply to each entity separately and individually, as the trial court held, or whether "OK Transport, Inc., Oscar Koester & Sons" is really one single entity for purposes of borrowed and nonowned coverage.

This dispute arose because the policy is ambiguous. An insurance policy is ambiguous if it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ about its meaning. *Property Owners Ins. Co. v. Hack* (1990), Ind.App., 559 N.E.2d 396, 399. Ambiguous insurance contracts are strictly construed against the insurer. *Id.; Meridian Mut. Ins. Co. v. Cox* (1989), Ind.App., 541 N.E.2d 959, *trans. denied.* Here, the "named insured" provision listing "OK Transport, Inc., Oscar Koester & Sons" is ambiguous. The language of the policy does not reveal to us whether the two entities named were to be considered as a single entity or as two separate entities. If treated as a single entity, then any vehicle owned by the other would not be covered

---

**2.** By way of example, Indiana constructs the following argument:

Under the Court's present interpretation of the severability clause, Company One and Company Two could jointly obtain coverage for scheduled vehicles. If Company One owned vehicles A and B, but scheduled only B, and Company Two owned vehicles C and D, but scheduled only C, Company One could then use vehicle D while Company Two used vehicle B. The companies could simply never use the vehicles which they owned and scheduled. As to the individual companies, the vehicles in use would be non-owned, and, under the present construction of this policy, would qualify for coverage even though the insurance company never accepted the risk nor received payments on those vehicles.
*Brief of Appellant* at 19–20.

under Item 8, Hired Autos Only. If treated as two separate insureds, however, a vehicle owned by one but not the other would be covered if hired or borrowed by the non-owner. The trial court heard evidence concerning the intended agreement from both Indiana representatives and members of the Koester family, then made its decision that O.K. Transport, Inc. and Oscar Koester & Sons were to be considered separately insured under the terms of the contract. Based on the policy language alone, we are unable to conclude which result was intended by the parties. Both interpretations strike us as reasonable.

Other courts which have addressed similar issues appear to be fairly equally divided. For example, the issue of coverage seems to have most often arisen in the context of "temporary substitute automobile" clauses; these provide coverage to automobiles not owned by the named insured when the named insured's scheduled automobile is out of service. The named insured is one spouse, but the policy defines "named insured" to include the other spouse. Disputes seem to have arisen in the following situation: husband owns vehicle #1 and wife owns vehicle #2. The insurance policy's listed "named insured" is the husband, but the definition of "named insured" includes wife. Vehicle #1, for whatever reason, is in disrepair and cannot be driven, so husband temporarily borrows vehicle #2. Husband is involved in an accident while driving vehicle #2. Husband seeks coverage, but insurance company denies it because husband was not driving a nonowned vehicle at the time of the accident. Because wife was included in the definition of "named insured," and because wife owned the wrecked vehicle, there was no coverage.

Under these circumstances, some courts have agreed with the insurance company that no coverage existed (e.g. *Cotton States Mutual Ins. Co. v. Bowden* (1975), 136 Ga.App. 499, 221 S.E.2d 832; *Government Employees Ins. Co. v. Kligler* (1977), 42 N.Y.2d 863, 397 N.Y.S.2d 777, 366 N.E.2d 865; *Garber v. Travelers Ins. Companies* (1980), 280 Pa.Super. 323, 421 A.2d 744), whereas others have ruled to the contrary (*Caldwell v. Hartford Accident & Indemnity Co.* (1964), 248 Miss. 767, 160 So.2d 209; *Nationwide Mutual Ins. Co. v. Taylor* (1981), 55 N.C.App. 76, 284 S.E.2d 532; *Baxley v. State Farm Mutual Liability Ins. Co.* (1962), 241 S.C. 332, 128 S.E.2d 165). In this latter case, the Supreme Court of South Carolina reasoned that the definition of "named insured" had the effect of making the "named insured" two people instead of one; therefore the temporary substitute automobile, owned by wife alone, was covered because it was not owned by the named insured, who were considered two people. Coverage would have been properly denied if the vehicle involved in the accident had been owned by *both* husband and wife. *Id.* Accord *Farley v. American Automobile Ins. Co.* (1952), 137 W.Va. 455, 72 S.E.2d 520 (insurance policy issued to "Earl Farley and Henry Wallace"; Farley borrowed Wallace's truck and became involved in an accident; substitute auto not owned by named insured, but only by one of them).

We cite these cases as examples supporting the proposition that reasonably intelligent people can differ about the sweep of "named insured" definitions. We believe the examples are relevant because the hired automobile provision of the policy at issue is analogous to the temporary substitute automobile provisions in the cited cases. Because this is so, we have no difficulty concluding the "named insured" portion of Indiana's policy is ambiguous. As such, it is to be strictly construed in favor of the insured. *Hack, supra.* Therefore, the trial court's determination cannot be considered clearly erroneous.

The judgment of the trial court is affirmed.

ROBERTSON and BARTEAU, J., concur.