In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2307

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

SCHILLI TRANSPORTATION SERVICES INC.,
ATLANTIC INLAND CARRIERS, INC. and
WVT OF TEXAS, INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-CV-00176—**Andrew P. Rodovich**, *Magistrate Judge.*

ARGUED OCTOBER 26, 2011—DECIDED FEBRUARY 13, 2012

Before RIPPLE and HAMILTON, *Circuit Judges*, and
MYERSCOUGH, *District Judge.*\*

MYERSCOUGH, *District Judge.*  In this diversity action,
the district court granted summary judgment in favor

---

\* The Honorable Sue E. Myerscough of the Central District
of Illinois, sitting by designation.

of the plaintiff. The district court rejected the defendants'
contention that the insurance policy at issue was am-
biguous and concluded that the policy imposed joint
and several liability on the defendants for the payment
of the deductible called for under the policy. Because
we conclude the insurance policy was ambiguous as to
the nature of the defendants' liability for the deductible,
we reverse and remand.

## I.  BACKGROUND

Plaintiff, St. Paul Fire & Marine Insurance Company
(St. Paul), issued insurance policies to Defendants
Schilli Transportation Services, Inc. (Schilli Transporta-
tion), Atlantic Inland Carriers, Inc. (Atlantic), WVT of
Texas, Inc. (WVT), and several other corporations not
involved in this appeal, for the time periods of June 1,
2000 to June 1, 2001, and June 1, 2001 to June 1, 2002.[1]
Schilli Transportation, Atlantic, and WVT are separate
corporations. Schilli Transportation is a freight broker
who arranges freight for other trucking companies and
provides risk management services for claims asserted
against other trucking companies. Schilli Transportation
has never owned tractor-trailers or employed truck
drivers. Atlantic was an interstate motor carrier but has
been defunct since 2003. WVT is an operating inter-
state motor carrier.

---

[1] Because the relevant provisions in the policies are the
same, for the ease of the reader we will hereinafter refer to
the policies jointly as "the Policy."

The dispute in this case is over who is responsible to pay the deductibles on six separate claims brought against one or more of the defendants for accidents that occurred during the duration of the Policy and for which St. Paul advanced funds to defend and/or settle. Under the Policy, St. Paul had the right and duty to defend any claim or suit for bodily injury or property damage made or brought against any protected person. St. Paul would "do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent." The Policy had a limit of coverage of $1,000,000 for each accident and a $100,000 basket deductible per occurrence.

The payment of the deductible was addressed in the "Repayment of Expenses" provision. The "Repayment of Expenses" provision, included in the Policy as part of the "Basket Deductible Endorsement," states that St. Paul "will pay all expenses to settle a claim or suit. You'll be responsible for the amount of expenses within the deductible. As soon as we notify you of a payment, you agree to reimburse us for any such expenses until the total amount of reimbursed damages and expenses exceeds the deductible amount shown in the coverage summary . . . ." The Policy further provides that "[y]ou agree to repay us up to this deductible amount for all damages caused by any one accident, as soon as we notify you of the judgment or settlement."

The "Introduction" section of the Policy defines "you, your and yours" as follows: "[t]he words you, your and yours mean the insured named here, which is a

CORPORATION." The Policy then lists Schilli Transportation's name and address. Underneath Schilli Transportation's name and address, the Policy states "Insured Names Continued on Back." On the back of that page, the Policy provides: "Insured Names Continued:" and lists eight more companies, but not their addresses, including Atlantic and WVT.

The Policy also contains a "Separation of Protected Persons" clause, located in the part of the Policy dealing with automobile coverage, which states that St. Paul will apply the agreement "to each protected person named in the Introduction as if that protected person was the only named one there; and separately to each other protected person." The provision also states the limit of coverage is shared by all protected persons.

The facts related to the six claims at issue in this case are as follows:

### 1. Claim 1

On June 22, 2000, Albert Kozusko, a WVT employee, was injured when an Owens Corning employee ran over his foot with a forklift while Kozusko was attempting to unload a semi-tractor trailer. Kozusko asserted a claim against St. Paul for uninsured motorist coverage under the Policy. Kozusko voluntarily dismissed the complaint. St. Paul incurred costs of $13,161.70 to defend the claim.

## 2. Claim 2

On January 18, 2001, Heather Thompson, Kale Thompson, and Kendra Thompson were involved in an accident with Henry Owens. The Thompsons brought a claim against Owens, Schilli Transportation, Atlantic, Schilli Leasing, Inc., Schilli Specialized, Inc., and Whiteford Services, Inc. The Thompsons alleged Owens was an employee of one or more of the other defendants, including Schilli Transportation and Atlantic, and was driving in the course of his employment at the time of the collision. St. Paul eventually settled the claim for more than $100,000 in exchange for the release of the Thompsons' claims against Schilli Transportation, Atlantic, WVT, and several other parties.

## 3. Claim 3

On May 8, 2011, Leah Ann and Christopher Wurslin were in an automobile accident with Scott Yake. The Wurslins filed a complaint against Schilli Transportation to recover for injuries Leah Ann Wurslin sustained in the accident. The complaint alleged that Schilli Transportation was Yake's employer and was also the owner/lessor of the vehicle involved in the May 2001 automobile accident. According to the complaint, Yake, while in the course of his employment with Schilli Transportation, operated the vehicle in a negligent manner causing him to collide with Leah Ann Wurslin's vehicle. St. Paul settled the Wurslins' claims for $135,000 in exchange for the release of the Wurslins' claims against Yake, Schilli Transportation, and St. Paul.

**4. Claim 4**

On October 25, 2001, Andrea Johnson was involved in an accident with a semi-tractor trailer driven by an Atlantic employee. St. Paul negotiated a $16,000 settlement of Johnson's claim. Johnson executed a release which named Atlantic and Schilli Transportation as two of the parties released from all claims.

**5. Claim 5**

On January 6, 2002, Allison Bergner was in a three-vehicle collision that involved a semi-tractor trailer driven by Donald Indorf. Indorf gave a recorded statement to a claims adjuster for St. Paul in which he stated he was an employee of Schilli Transportation. St. Paul incurred $25,971.61 in the defense and settlement of this claim.

**6. Claim 6**

On February 25, 2002, Otilio Aguilar and Maria Fuentas were in an automobile collision. Aguilar and Fuentas brought suit against Dale Brown and Schilli Transportation as a result of the accident. The plaintiffs alleged Brown was an employee of Schilli Transportation and was driving a vehicle owned by Schilli Transportation when Brown collided with them. St. Paul negotiated $62,500 settlements with both Aguilar and Fuentes. The release and indemnity agreement executed by Aguilar and Fuentes released all claims against Brown, WVT, and Schilli Transportation.

St. Paul communicated with Schilli Transportation multiple times regarding the developments in the handling and settlement of each respective claim that resulted from the above-described accidents. St. Paul sent Schilli Transportation invoices seeking reimbursement for the amounts, up to the $100,000 deductible, that St. Paul advanced in defending and settling each case. Schilli Transportation refused to pay.

St. Paul brought suit against Schilli Transportation, Atlantic, and WVT seeking reimbursement, up to the deductible amount, for the administration, investigation, adjustment, settlement, and disposition of each claim. In granting summary judgment in favor of St. Paul, the district court stated that "[t]he [P]olicy clearly and unambiguously defines 'you' as all of the corporations by specifically listing each corporation, and therefore, provisions containing the term 'you' pertain to all of the listed corporations." According to the district court, inserting that definition into the Policy's repayment of expenses provision, "the [P]olicy would read that a corporation Schilli [Transportation], Atlantic, [WVT], and the other named insureds, would be responsible for the amount of expenses within that deductible . . . . For this reason, all of the listed corporations are liable under the repayment of expenses provision, and for the deductible at issue."

This appeal followed.

## II. ANALYSIS

On appeal, Defendants maintain the district court erred by granting summary judgment in favor of St. Paul. Specifically, Defendants contend that the Policy does not contain any language imposing joint and several liability on each insured for the deductibles or claim expenses of the other insureds. Defendants also argue that the Policy contains a "Separation of Protected Persons" clause that mandates each insured be responsible only for the deductible on claims against that particular insured. Finally, Defendants maintain that there are questions of fact regarding each of the six claims mentioned above.

To resolve the issues on appeal, this Court must interpret the provisions of the insurance policy at issue. The parties agree that Indiana law governs the interpretation of the Policy.

Insurance contracts are governed by the same rules of construction as other contracts. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997). "When interpreting an insurance contract courts must look at the contract as a whole." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005).

"In Indiana, the clear and unambiguous language of an insurance policy must be given its plain and ordinary meaning." *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 567 (7th Cir. 1997). However, when an insurance policy is ambiguous it is strictly construed against the insurer. *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996). Failure to define a term in an

insurance policy does not necessarily make it ambiguous. *Colonial Penn Ins. Co.*, 690 N.E.2d at 667. Moreover, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002).

Instead, an insurance policy is ambiguous only if a provision is susceptible to more than one reasonable interpretation. *Colonial Penn Ins. Co.*, 690 N.E.2d at 667. "If the terms of the contract are unclear, ambiguous, or capable of more than one interpretation, we will construe them to determine and give effect to the intent of the parties at the time they entered into the contract. We construe a contract against the drafter only if we cannot ascertain the parties' intent from all the ordinary interpretive guides*." In re Kemper Ins. Cos.*, 819 N.E.2d 485, 490 (Ind. Ct. App. 2004). "We review the district court's grant of summary judgment, and its construction of the insurance policy, *de novo." Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010).

First, St. Paul argues that because St. Paul accepted coverage and advanced the deductible for the benefit of the insured, no public policy reason exists to narrowly construe the policy language against St. Paul. Instead, St. Paul contends the Policy should be construed from a neutral stance and cites *Bedwell v. Sagamore Ins. Co.*, 753 N.E.2d 775, 779 (Ind. Ct. App. 2001), which states that "when a case involves a dispute between a third party and an insurer, we determine the general intent of

the contract from a neutral stance." However, in the cases in which the general intent of a contract has been determined from a neutral stance, "the party that was seeking to benefit from a particular interpretation of the insurance contract was not a party to the contract." *Burkett v. American Family Ins. Group*, 737 N.E.2d 447, 453 (Ind. Ct. App. 2000) (citing *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973) (when a nonparty to a contract is making a claim under the contract, the court is not required to construe the contract language any certain way and may view the contract from a neutral stance to seek out the general intent of the contract)). Here, the dispute is not between a third party and the insurer. Therefore, the reasoning behind determining the general intent of a contract from a neutral stance does not apply here where the dispute is between the parties to the insurance contract, i.e., St. Paul and the named insureds under the Policy.

### A. The Insurance Policy Is Ambiguous with Respect to the Issue of Joint and Several Liability for the Deductibles

In this case, the parties dispute whether the Policy provides joint and several liability among Defendants for the payment of the $100,000 deductible per occurrence called for by the Policy. We agree that St. Paul has valid claims against one or more of the insureds for the deductible amounts St. Paul spent to settle and defend the claims in question. However, we do not agree with the district court's conclusion that the Policy

language is clear and unambiguous as to whether the named insureds are jointly and severally liable for the deductible.

As stated, the Policy provides that "[y]ou agree to repay us up to this deductible amount for all damages caused by any one accident, as soon as we notify you of the judgment or settlement." At the center of the dispute in this case is the meaning of the word "you" in this provision.

The "Introduction" section of the Policy states that "[t]he words you, your and yours mean the insured named here, which is a Corporation." The Policy then lists Schilli Transportation's name and address. Underneath Schilli Transportation's name and address, the Policy states "Insured Names Continued on Back." On the back of that page, the Policy states, "Insured Names Continued:" and lists eight more companies, but not their addresses, including Atlantic and WVT.

### 1. The Manner in Which the Named Insureds Are Listed Creates Ambiguity as to Whether Named Insureds Are to be Considered Jointly or Separately for Purposes of Defining "You, Your and Yours"

Defendants maintain that the manner in which St. Paul has listed the named insureds in the Policy is ambiguous. Specifically, Defendants interpret the language defining "you" as "a Corporation" and the manner in which the named insureds are listed to mean each corporation will be treated individually. St. Paul interprets the

language and manner in which the named insureds are listed to mean "you" refers to all corporations listed.

Defendants rely on *Indiana Insurance Co. v. O.K. Transp., Inc.*, 587 N.E.2d 129 (Ind. Ct. App. 1992), as support for their position that the Policy is ambiguous because the definition of "you, your and yours" is related to the manner in which the named insureds are listed. In *Indiana Insurance Co.*, a truck involved in an accident was owned by Oscar Koester & Sons but was driven by Johnnie Koester, who was an employee of O.K. Transport, Inc. engaged in O.K. Transport business at the time of the accident. *Id*. at 130-31. The insurance policy at issue there listed the named insureds as "OK Transport, Inc., Oscar Koester & Sons." *Id*. at 130. These were two separate entities controlled by the same family. *Id*.

The insurance policy defined "Nonowned autos" as "[o]nly those autos you do not own, lease, hire, or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs." *Id*. The trial court concluded that the named insureds constituted two separate insured entities, affording each the benefits and obligations of the policy individually. *Id*. at 131. As a result, the trial court held the pickup truck driven by Johnnie Koester as an agent for O.K. Transport, but owned by Oscar Koester & Sons, was insured because it was a borrowed "nonowned auto" with respect to O.K. Transport. *Id*. According to the Court of Appeals of Indiana, the trial court appeared to have based its conclusion, in part, on the policy's severability clause, which stated

as follows: "Except with respect to our limits of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought*." Id*.

The court of appeals identified the dispositive issue as "whether the benefits of the policy apply to each entity separately and individually, as the trial court held, or whether 'OK Transport, Inc., Oscar Koester & Sons' is really one single entity for purposes of borrowed and nonowned coverage." *Id*. The appellate court concluded the named insured provision listing "OK Transport, Inc., Oscar Koester & Sons" was ambiguous and stated, "[t]he language of the policy does not reveal to us whether the two entities named were to be considered as a single entity or as two separate entities." *Id*. Because the court found the "named insured" portion of the policy ambiguous, the court strictly construed it in favor of the insured. *Id*. at 132.

In the case *sub judice*, the Policy defines "you, your and yours" as "the insured named here, which is a CORPORATION." The Policy then lists Schilli Transportation and indicates "Insured Names Continued On Back." On the back of the page, the Policy lists the eight other companies, including Atlantic and WVT, on separate lines. As an example, the first two names on the back of this page are listed as follows:

Schilli Leasing, Inc.
Wabash Valley Transportation, Inc.

As stated, Defendants interpret the language defining "you" as "a Corporation" to mean each corporation will

be treated individually while St. Paul interprets the language to mean "you" refers to all of the corporations listed. A reasonable person could find both interpretations reasonable. Moreover, no language imposing joint and several liability for the deductibles exists anywhere in the Policy. Therefore, like the court in *Indiana Insurance Co.* found with respect to that policy, we conclude the manner in which the named insureds were listed here makes the definition of the terms "you, your, and yours" ambiguous.

Further support for our position that the manner in which the named insureds were listed in the Policy makes the definition of "you, your and yours" ambiguous is found in the First Circuit's decision in *Over the Road Drivers, Inc. v. Transport Ins. Co.*, 637 F.2d 816 (1st Cir. 1980).[2] In *Over the Road Drivers, Inc.*, the issue before the court was whether seven companies insured by a Workmen's Compensation Policy were jointly and severally liable for all premiums owed by any of them under the policy. *Id.* at 818. Like the Policy here, the Workmen's Compensation Policy in *Over the Road Drivers, Inc.* did not contain express language making each insured

---

[2] While not expressly stated in the First Circuit's opinion, the *Over the Road Drivers, Inc.* court presumably applied Massachusetts law. Indiana and Massachusetts follow similar rules of construction in the interpretation insurance policies. The general rules of construction in the interpretation of insurance policies that Massachusetts courts follow can be found at *Allmerica Fin. Corp. v Certain Underwriters at Lloyd's, London*, 871 N.E.2d 418, 425 (Mass. 2007).

company jointly and severally liable for all premiums owed. *See id*. The policy simply referred to "the named insured" as being responsible for premium payments. *Id*. The attached "Declarations Amendment Endorsement" defined the "Name of Insured" as: "Old Colony Transportation Co., Inc. and/or Bay State Realty & Advertising Co. and/or Interstate Transport Leasing Corp. and/or Interstate-Carolina Transport Leasing Corp. and/or Over The Road Drivers, Inc. and/or A-O.K. Leasing Corp. and/or Vigeant Labor Leasing Corp." *Id*. The district court concluded the policy was not ambiguous and the language of the Workmen's Compensation Policy did not create joint and several liability for premium payments. *Id*. Therefore, the court refused to go into the history of the formation of the policy and make a construction different from what it thought were the plain terms. *Id*.

The First Circuit disagreed with the district court's conclusion that the policy language was clear and unambiguous. *Id*. The court concluded that "[i]nclusion of the seven companies as 'the named insured' under a single insurance contract might indicate that the companies were to be treated as a group or joint operation." *Id*. The court further stated that while the definition of "named insured" as company A "and/or" company B suggested the possibility that each company was intended to be liable for the defaults of all other companies listed, that language was not sufficient in and of itself to create joint and several liability. *Id*. However, the court could find no language in the plain terms of the contract that unambiguously stated that liability

was to be separate, not joint. Therefore, the court found the history of the formation of the policy and the course of dealing under the policy would be admissible to establish the intention of the parties. *Id*.

There, the insured had submitted the insurance policy itself, which did not contain a provision addressing the nature of the liability for the premium. *Id*. at 821. The insured also submitted evidence of the conduct of the parties with respect to the payment of premiums and calculations of refunds as support for its motion for summary judgment. *Id*. That evidence showed that the insurance company billed each of the insured companies separately for its share of the total premium and refunds were calculated separately. *Id*. at 817, 821-22. The insurance company's "own book-keeping maintained a strict separation between the financial accounts of each company." *Id*. at 822. The insurance company did not offer competent evidence regarding the history of the formation of the insurance contract or the course of dealing between the parties that indicated the parties' intention that the premium liability would be joint and several. *Id*. at 819-20. After noting the manner in which the policy defined the "named insured" and the fact the policy included seven companies as named insureds under a single insurance contract, the First Circuit concluded the policy was ambiguous. According to that court, those facts suggested the possibility each party was intended to be jointly and severally liable for the premiums. *Id*. at 822. After considering that the policy made no reference to joint liability and looking at the evidence presented regarding

the parties' practices with respect to premium payments and the calculation of refunds, the court held that the parties were liable under the policy only for those premiums attributable to the coverage of its own employees. *Id*. at 821-22.

As stated, the Policy states that "[t]he words you, your and yours mean the insured named here, which is a CORPORATION." The Policy then lists Schilli Transportation's name and address. Underneath Schilli Transportation's name and address, the Policy states "Insured Names Continued on Back." On the back of that page, the Policy provides: "Insured Names Continued:" and lists eight more companies, but not their addresses, including Atlantic and WVT. The fact that there are nine named insureds, along with the manner in which those companies were listed, could indicate that the companies were, for the purposes of the definition of "you, your and yours," to be treated jointly as a group instead of separately. However, we conclude this language is not sufficient in and of itself to create joint and several liability among Defendants for the deductibles here. We have found nothing in the plain terms of the Policy which tells us unambiguously that liability is to be joint, not separate.

However, unlike *Over the Road Drivers, Inc.*, insufficient evidence has been presented regarding the history of the formation of the Policy or the Parties' past practices with regard to past payments of deductibles to use as evidence of the Parties' intent. The court in *Over the Road Drivers, Inc.* had evidence of the Parties' past practices with regard to billing and paying for the pre-

mium, which was relevant evidence of their intent that liability for the premium be separate rather than joint. Here, there is no such evidence of the history of the formation of the Policy or of St. Paul's and Defendants' past practices with regard to the payment of deductibles.

### 2. The Separation of Protected Persons Clause Creates Ambiguity

In addition to arguing that the Policy is ambiguous, Defendants also advance the additional argument that under the "Separation of Protected Persons" clause, each insured is only responsible for its own deductibles and cite *Steadfast Insurance Co. v. Pop Restaurants, LLC*, No. 4:09-cv-3148, 2010 WL 3155923 (S.D. Tex. Aug. 10, 2010), in support. St. Paul argues that this argument is forfeited because Defendants did not rely on the "Separation of Protected Persons" clause before the district court.

"Generally, a litigant forfeits appellate review of an issue by not raising it below." *Lesser v. Espy*, 34 F.3d 1301, 1305 n.1 (7th Cir. 1994). However, we are not required to overlook relevant provisions of an insurance policy because the parties failed to discuss those provisions below. *See United States for Use and Benefit of H & S Indus., Inc. v. F.D. Rich Co.*, 525 F.2d 760, 767 (7th Cir. 1975) (refusing to find waiver because the issue was a matter of interpreting the contract, which must be read as a whole); *see also Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 519 n.5 (5th Cir. 2010) (stating an appellate court is "not bound to overlook the relevant provisions of the policy only because the parties failed to point to them").

We have already concluded that the language in the policy is not sufficient in and of itself to create joint and several liability among Defendants for the deductibles. Moreover, the language of the "Separation of Protected Persons" clause creates further ambiguity with respect to Defendants' joint and several liability for the deductibles and further supports reversal in this case. For these reasons, we exercise our discretion to consider this provision.

Having determined that we will exercise our discretion to address the "Separation of Protected Persons" clause, we turn to the case Defendants cite in support of their argument that each insured is only responsible for its own deductibles. In *Steadfast Insurance Co.*, 2010 WL 3155923, at *1 (S.D. Tex. 2010), the plaintiff, Steadfast Insurance Company (Steadfast), filed suit against the defendants who were named insureds on an insurance policy. Steadfast sought to recover deductible amounts owed on more than 25 claims that Steadfast had defended against and resolved for the named insureds. *Id*. Steadfast argued that the defendants were jointly and severally liable for claims made against any named insured in the policy. *Id*.

The defendants filed motions to dismiss for improper venue, arguing that they did not reside in the Southern District of Texas and that a substantial part of Steadfast's claim did not arise in that district. *Id*. In response to the issue of whether any named insureds were subject to specific jurisdiction, Steadfast argued that under the policies the named insureds agreed to be

jointly and severally liable for payments of deductibles owed on claims brought in the Southern District of Texas. *Id*. at *4.

The deductible endorsements stated: "Our obligation under the 'bodily injury,' 'property damage,' 'personal injury' and 'advertising injury' coverages to pay damages on your behalf applies only to the amount of damages and 'defense costs' in excess of any deductible amount stated in the Schedule above . . . ." *Id*. at *5. The policies defined "'you' and 'your' as the Named Insured shown in the declarations, as well as any other person or organization qualifying as a Named Insured under the policies." *Id*. at *6. There was also a "separation of insureds" provision that stated:

> "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:
>
>> a. As if each Named Insured were the only named insured; and
>>
>> b. Separately to each insured against whom claim is made or 'suit' is brought."

*Id*. at *6.

Steadfast argued that the separation of insureds provision had been applied in the context of coverage, not in the context of determining who was responsible for the payment of deductibles. *Id*. at *6. Steadfast further argued that named insureds should not be considered separately for purposes of deductible owed because they are not considered separately for purposes of the

limits of insurance and because the deductibles reduce the limits of insurance. *Id.*

The district court determined that Steadfast attempted to "stretch the policies much further than their language allows" and stated as follows:

> The Court finds that, at the very best, the policies are ambiguous as to whether Defendants are jointly and severally liable for a claim paid on behalf of any Named Insured. The policies do not even include the phrase "jointly and severally" liable in their provisions. Furthermore, the Separation of Insureds provisions provides that policies shall apply separately as to each insured against whom a suit is brought. Even though Steadfast may be right that courts have applied this provision in the context of coverage rather than deductible payments, the plain language of the provision, at the very least, creates ambiguity as to whether all Named Insureds are jointly and severally liable for each other's claims.

*Id.* Because the insurance contract was ambiguous, the court concluded Steadfast failed to provide the basis for the court to exercise personal jurisdiction over the defendants. *Id.* at *7. The court stated it made this "finding only for the purposes of determining the venue question, and not as a final determination on the merits of this case." *Id.*

In this case, the "Separation of Protected Persons" provision in the Policy is very similar to the provision in *Steadfast Insurance Co.* The "Separation of Protected Persons" clause states that St. Paul will apply the agree-

ment "to each protected person named in the Introduction as if that protected person was the only named one there; and separately to each other protected person." The provision goes on to state the limit of coverage is shared by all protected persons. Moreover, like the policy in *Steadfast Insurance Co.*, the Policy here does not include the phrase "jointly and severally liable." Further, the *Steadfast Insurance Co.* court explicitly rejected the argument St. Paul makes here, i.e., that courts have applied the "Separation of Protected Persons" provision in the context of coverage rather than deductible payments. *Id*. at *6. In doing so, the *Steadfast Insurance Co.* court stated "[e]ven though Steadfast may be right that courts have applied [the Separation of Insureds] provision in the context of coverage rather than deductible payments, the plain language of the provision, at the very least, creates ambiguity as to whether all Named Insureds are jointly and severally liable for each other's claims." *Id*. For these reasons, we also conclude that the "Separation of Protected Persons" provision in the Policy creates further ambiguity, in addition to the ambiguity created by the definition of "you, your and yours" and the way the named insureds were listed, as to whether Defendants are jointly and severally liable for the deductible payments.

### III. CONCLUSION

In sum, the Policy defines "you, your and yours" as the named insured, a corporation, and then lists Schilli Transportation and eight other corporations. The manner

in which the corporations are listed may suggest the corporations are to be considered jointly but is not sufficient in and of itself to create joint and several liability. *See Indiana Ins. Co.*, 587 N.E.2d at 131-32; *Over the Road Drivers, Inc.*, 637 F.2d at 818. Moreover, the Policy never mentions "joint and several liability" in its provisions. The Policy is ambiguous as to whether Defendants are jointly and severally liable for the deductible payments on this basis alone. However, the "Separation of Protected Persons" provision creates further ambiguity by stating that the Policy will be applied "to each protected person named in the Introduction as if that protected person was the only named one there; and separately to each other protected person." Such a provision "at the very least, creates ambiguity as to whether all Named Insureds are jointly and severally liable for each other's claims." *See Steadfast*, 2010 WL 3155923, at *6.

Because the Policy language is ambiguous as to joint and several liability for the deductibles at issue, the question of the Parties' intent remains. Therefore, "evidence concerning 'the history of the formation of the policy' and the course of dealing under it would be admissible, if available and relevant, to establish the intention of the parties." *Over the Road Drivers, Inc.*, 637 F.2d at 818 (quoting 3 Corbin on Contracts §§ 559, 579 (2d ed. 1960)). Because the district court found the Policy unambiguously created joint and several liability for payment of the deductibles, that court did not need to address issues such as (1) evidence of the formation of the contract; (2) evidence of how the Parties dealt with liability

for the deductibles in the past; (3) the effect, if any, of the "Right and Duty to Defend" provision in combination with the fact that, with respect to all six claims, Schilli Transportation: (a) was named in a claim or as a defendant in a suit; (b) received a defense from St. Paul; and/or (c) was released from all claims by the injured party/plaintiff as part of a settlement.[3] Any issues relevant to a determination of the Parties' intent may be developed on remand.

REVERSED and REMANDED

---

[3] Atlantic and WVT were also released from liability in the settlement with the Thompsons (Claim 2). The release executed by Johnson also released all claims against Atlantic (Claim 4). The Aguilar and Fuentas release and indemnity agreement also released all claims against WVT (Claim 6).